1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

VICTORIA L. SANCHEZ,

                            Plaintiff,

      v.

CAROLYN COLVIN,
Acting Commissioner of the Social
Security Administration,

                      Defendant.

NO:  2:14-CV-168-RMP

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

13

14

15

Before the Court are cross-motions for summary judgment.  **ECF Nos. 12 and 13**.  The Court has reviewed the motions, the memoranda, and the administrative record.  The Court is fully informed.

16

BACKGROUND

17

18

19

20

21

Ms. Sanchez protectively filed a Social Security Disability ("SSD") application on April 20, 2011, alleging disability beginning March 29, 2011.  Tr. 21.  The application was denied initially on September 13, 2011, and on reconsideration on February 1, 2012.  Tr. 21.  Ms. Sanchez requested a hearing, which was held before Administrative Law Judge ("ALJ") James W. Sherry on

1    January 16, 2013.  Tr. 49.  Ms. Sanchez was present and represented by attorney

2    David Lybbert.  Tr. 49.  The ALJ heard testimony from K. Diane Kramer, a

3    vocational expert.  Tr. 49.

4         The ALJ found that Ms. Sanchez met the insured status requirement of the

5    Social Security Act through June 30, 2014, and that Ms. Sanchez had not engaged

6    in substantial gainful activity, as defined in 20 C.F.R. § 404.1571, since March 29,

7    2011.  Tr. 23.  Further, the ALJ found Ms. Sanchez had severe impairments of

8    cervical degenerative disc disease, status post anterior discectomy and fusion with

9    allograft and Atlantis plate; lumbar degenerative disk disease; bilateral knee

10   degenerative joint disease, mild-to-moderate right knee and left knee; carpal tunnel

11   syndrome on the right; diabetes; asthma; and obesity pursuant to 20 C.F.R. §

12   404.1520(c).  Tr. 23.

13        However, the ALJ found Ms. Sanchez did not have an impairment or

14   combination of impairments that met or medically equaled the severity of one of

15   the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 or 404.1526 and

16   therefore was not under a disability within the meaning of the Social Security Act.

17   Tr. 23.  The ALJ further found that Ms. Sanchez had the residual functional

18   capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), and was

19   capable of standing/walking for two hours of an eight-hour workday and frequent

20   use of her hands for handling and fingering of objects.  Tr. 26.

21

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 2

Ms. Sanchez filed a request for review by the Appeals Council, which was denied on May 5, 2014.  Tr. 1.  Ms. Sanchez then filed a complaint in District Court for the Eastern District of Washington on June 3, 2014, and the Defendant answered the complaint on August 11, 2014.  Therefore, this matter is properly before the Court pursuant to 42 U.S.C. § 405(g).  Ms. Sanchez then moved the Court for summary judgment on November 25, 2014, and the Defendant also so moved, on January 16, 2015.  The case was then reassigned to Chief Judge Rosanna Malouf Peterson on June 23, 2015, for a ruling on the motions.

STATEMENT OF FACTS

The facts of this case are set forth in the administrative hearing transcripts and record, ECF No. 9.  Ms. Sanchez was 40 years old when she applied for SSD and 42 years old on the date of the hearing.  Tr. 27, 33.  Ms. Sanchez has a 7th grade education and past relevant work as an agricultural produce packer, convenience store cashier, and home health attendant, all requiring medium exertion levels.  Tr. 33.  The ALJ found Ms. Sanchez was unable to perform her past relevant work based on her current substantial impairments but could still perform unskilled labor at light or sedentary exertion levels.  Tr. 33-34.

STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not

based on legal error and is supported by substantial evidence.  *See Jones v.*

*Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).

"The [Commissioner's] determination that a claimant is not disabled will be

upheld if the findings of fact are supported by substantial evidence." *Delgado v.*

*Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).

Substantial evidence is more than a mere scintilla, but less than a preponderance.

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *accord*

*McCallister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989) (citing *Desrosiers v.*

*Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).  Substantial

evidence "means such evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations

omitted).

The court should uphold "such inferences and conclusions as the

[Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*,

348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a

whole, not just the evidence supporting the decisions of the Commissioner.

*Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*,

648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in

evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one

rational interpretation, the court may not substitute its judgment for that of the

Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both

medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. Step one determines if the claimant is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past.

If the claimant is able to perform his or her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual functional capacity ("RFC") assessment is considered.  20 C.F.R. § 416.945(a).

If the claimant cannot perform his or her previous work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ISSUES

Ms. Sanchez argues that the ALJ erred by (1) failing to properly accept the opinions of her examining physician; (2) failing to find her condition met or

equaled a listing of Impairment at Step 3 of the sequential evaluation process; (3)

improperly rejecting her subjective complaints; and (4) failing to include in his

hypothetical to the Vocational Expert all of the relevant limitations identified by

the Medical Expert.

DISCUSSION

**1.    Failure to Properly Accept the Opinions of the Plaintiff's Examining Medical Provider**

Ms. Sanchez claims that the ALJ improperly rejected the opinions of her

examining physician, Gary Gaffield, D.O., when the ALJ rejected (1) Dr.

Gaffield's stated restriction of handling and grasping limited to only

"occasionally," and (2) Dr. Gaffield's recommendation that Ms. Sanchez avoid

postural activities and environments that include stairs, inclines, and ramps.  ECF

No. 12 at 10.  The Defendant argues that the ALJ reasonably weighed the medical

evidence, which includes the opinion of State agency medical consultant Gordon

Hale, M.D., who found Ms. Sanchez could perform frequent fingering and most

postural activities on an occasional basis.  Tr. 111 and ECF No. 13 at 7.

"The Commissioner may not reject [the treating doctor's opinion] without

providing 'specific and legitimate reasons' supported by substantial evidence in the

record for doing so."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

However, "if a treating or examining doctor's opinion is contradicted by another

doctor's opinion, an ALJ may only reject it by providing specific and legitimate

reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 8

1211 (9th Cir. 2005).  When evaluating conflicting medical opinions, an ALJ need

not accept the opinion of a doctor whose opinion is inadequately supported by

clinical findings.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Additionally, SSD does not require claimants to be "utterly incapacitated" to

be entitled to benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  A

claimant's ability to perform the activities of daily living does not necessarily

translate into an ability to work a full-time job, although "if a claimant is able to

spend a substantial part of his day engaged in pursuits involving the performance

of physical functions that are transferable to a work setting, a specific finding as to

this fact may be sufficient to discredit an allegation of disabling excess pain."  *Id.*

Ms. Sanchez argues that the ALJ did not provide specific or legitimate

reasons, supported by substantial evidence, for determining that Ms. Sanchez was

capable either of more than occasional handling and fingering of objects or of

postural activities.  Defendants argue that the ALJ's reasons are sufficient.

As Dr. Gaffield's opinion was contradicted by Dr. Hale's opinion, the ALJ

needed to provide specific and legitimate reasons, supported by substantial

evidence, in order to reject Dr. Gaffield's recommendation.  *Bayliss v. Barnhart*,

427 F.3d 1211 (9th Cir. 2005).

Here, the ALJ found that Ms. Sanchez had the residual functional capacity to

perform light work as defined in 20 C.F.R. § 404.1567(b) because she was capable

of lifting or carrying up to twenty pounds occasionally and ten pounds frequently,

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 9

1    standing or walking for two hours in an eight hour workday, sitting for six hours in

2    an eight hour workday, frequently pushing and pulling weights within the lifting

3    restrictions, operating foot controls occasionally within the weight restrictions,

4    occasionally climbing stairs and ramps but never ladders or scaffolds, occasionally

5    balancing, stooping, crouching and crawling, frequently rotating, flexing and

6    extending her neck, and frequently using her hands for handling and fingering of

7    objects.  Tr. 26.  To make these findings, the ALJ determined two of Dr. Gaffield's

8    recommended limitations were not supported by objective findings.  Tr. 26-32.

9         First, the ALJ found the limitation of occasional manipulation was not

10   supported by Dr. Gaffield's objective findings, including intact grip strength and

11   dexterity.  Tr. 32.  The ALJ found that the claimant's complaints of tingling in the

12   fourth and fifth digits in the left hand was subjective and did not correlate with

13   objective findings because the Tinel's test was negative on her left.  Tr. 32, 424.

14   Furthermore, Dr. Hale provided limitations consistent with Dr. Gaffield's objective

15   findings, including Ms. Sanchez's intact grip and dexterity.  Tr. 32.  The ALJ

16   determined Ms. Sanchez was capable of more than occasional handling and

17   fingering of objects.  Tr. 32.

18        Second, the ALJ found that Dr. Gaffield's advice to avoid postural activities

19   and environments including stairs, inclines, and ramps was not supported by his

20   overall objective findings.  Tr. 32.  Ms. Sanchez is able to perform personal care,

21   cook, do laundry, wash dishes, vacuum, and shop for groceries.  Tr. 32.  The ALJ

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 10

found that these activities require occasional postural activities.  Tr. 32.

Furthermore, Ms. Sanchez's ability to do housework, cook, and shop forgroceries

requires a level of agility indicative of an individual who is capable of occasional

use of inclines and stairs.  Tr. 32.

The ALJ provided specific and legitimate reasons, supported by substantial

evidence in the record, sufficient to support his rejection of Dr. Gaffield's opinions

that Ms. Sanchez could only occasionally handle objects or that she should avoid

all postural activities.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996).  Although

Ms. Sanchez need not be utterly incapacitated to be entitled to SSD benefits, her

ability to perform the activities of daily living, as found by the ALJ, based on

specific performance of physical functions, provides substantial evidence for the

conclusion that she is capable of work with a sedentary RFC.  *Fair*, 885 F.2d at

603.  This Court finds that the ALJ did not improperly discount the opinions of

Dr. Gaffield, but rather applied proper legal standards and supported his decision

with substantial evidence.

**2. Failure to Find Ms. Sanchez's condition met or equaled a listing of Impairment in Step 3 of the Sequential Process**

Ms. Sanchez argues that she has met her burden of proving that her

condition meets or equals a level of impairment under Listing 1.02.  The burden is

upon the claimant to demonstrate that an impairment or combination of

impairments meets or equals a listing.  *Burch v. Barnhart*, 400 F.3d 676, 679, 683

(9th Cir. 2005).  "For a claimant to show that his impairment matches a listing, it

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 11

1  must meet *all* of the specified medical criteria.  An impairment that manifests only

2  some of those criteria, no matter how severely, does not qualify."  *Sullivan v.*

3  *Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  "For a claimant to

4  qualify for benefits by showing that his unlisted impairment, or combination of

5  impairments, is 'equivalent' to a listed impairment, he must present medical

6  findings equal in severity to *all* the criteria for the one most similar listed

7  impairment."  *Id.* at 531 (emphasis in original).

8    Listing 1.02 requires:

9    Major dysfunction of a joint(s) (due to any cause):  Characterized by
   gross anatomical deformity (e.g., subluxation, contracture, bony or
10   fibrous ankylosis, instability) and chronic joint pain and stiffness with
   signs of limitation of motion or other abnormal motion of the affected
11   joint(s), and findings on appropriate medically acceptable imaging of
   joint space narrowing, bony destruction, or ankylosis of the affected
12   joint(s).  With:

13   A. Involvement of one major peripheral weight-bearing joint (i.e., hip,
   knee, or ankle), resulting in inability to ambulate effectively, as defined
14   in 1.00B2b.

15  20 C.F.R. pt. 404, subpt. P, app. 1, 1.02.  The definition of the Inability to

16  Ambulate Effectively, while lengthy, is worth quoting in full.

17   (1) Definition.  Inability to ambulate effectively means an extreme
   limitation of the ability to walk; i.e., an impairment(s) that interferes
18   very seriously with the individual's ability to independently initiate,
   sustain, or complete activities.  **Ineffective ambulation is defined**
19   **generally as having insufficient lower extremity functioning** (see
   1.00J) **to permit independent ambulation without the use of a hand-**
20   **held assistive device(s)** that limits the functioning of both upper
   extremities. . . .

21

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 12

1      (2) To ambulate effectively, individuals must be capable of sustaining
2  a reasonable walking pace over a sufficient distance to be able to carry
   out activities of daily living.  They must have the ability to travel
3  without companion assistance to and from a place of employment or
   school.  Therefore, **examples of ineffective ambulation include**, but
4  are not limited to, the inability to walk without the use of a walker, two
   crutches or two canes, **the inability to walk a block at a reasonable**
5  **pace on rough or uneven surfaces**, the inability to use standard public
   transportation, **the inability to carry out routine ambulatory**
6  **activities, such as shopping and banking**, and the inability to climb a
   few steps at a reasonable pace with the use of a single hand rail.  The
7  ability to walk independently about one's home without the use of
   assistive devices does not, in and of itself, constitute effective
8  ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)(1)-(2) (emphasis added).

    Ms. Sanchez believes that she meets the definition of disability under Listing

1.02 because, since 2011, x-rays have shown bony destruction and anatomical

deformity in three compartments of the knee.  Furthermore, Ms. Sanchez argues

that Dr. Gaffield's recommendation to avoid stairs and postural activities

demonstrates she is unable to ambulate effectively.  Defendants argue that Ms.

Sanchez does not require the use of hand-held assistive devices to ambulate; that

the results of Dr. Gaffield's examinations consistently showed limitations of

"occasional" use of stairs; and that Ms. Sanchez's own testimony of daily living

reveals that her present condition does not prevent her from effective ambulation,

thereby demonstrating that she does not have major joint dysfunction characterized

by gross anatomical deformity as defined in Listing 1.02.

    The ALJ found that Ms. Sanchez's lower extremity impairments do not meet

or medically equal the requirements for Listing 1.02, Major Dysfunction of a Joint.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 13

Tr. 24.  The records shows that in 2008 a bilateral knee examination was benign

with an x-ray showing no significant abnormalities.  Tr. 31.  A 2011 x-ray of the

bilateral knees showed interval development of mild-to-moderate right and mild

left degenerative changes.  Tr. 31.  The ALJ found that in 2012, Ms. Sanchez was

able to move without obvious difficulties, her knees demonstrated no tendency

towards laxity, and there was no clicking.  She did not favor her right knee and had

a normal knee examination.  Tr. 30.  The ALJ found that there was no evidence in

the record showing that Ms. Sanchez has an extreme limitation of the ability to

walk or is incapable of sustaining a reasonable walking pace over a sufficient

distance to be able to carry out activities of daily living.  Tr. 24.

The ALJ's consideration of Listing 1.02 was not deficient.  The fact that Dr.

Gaffield made a recommendation to avoid uneven surfaces does not establish that

Ms. Sanchez is unable to ambulate effectively.  Ms. Sanchez's postural limitations

regarding ramps and stairs is an "occasional" limitation.  Tr. 100, 111, 269, 273,

426.  Per her own testimony, Ms. Sanchez does not lack the ability to carry out

routine ambulatory activities.  Tr. 57, 64.  While Ms. Sanchez may have difficulty

ambulating effectively for any great length of time, her limitations do not rise to

the level of rendering her incapable of sustaining the activities of daily living.

The ALJ did not err to find that Ms. Sanchez's condition did not meet or

equal a listing of Impairment in Step 3 of the Sequential Process.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 14

1    **3.  Failure to Accept Plaintiff's Subjective Complaints**

2           Ms. Sanchez contends that the ALJ improperly rejected her subjective

3    complaints.  ECF No. 12 at 14-16.  The ALJ found that Ms. Sanchez's statements

4    regarding the intensity, persistence, and limiting effects of her symptoms were not

5    credible.  Tr. 28-30.  The ALJ found Ms. Sanchez's treatment notes contain "a

6    significant amount of subjective complaints without a lot of objective support."

7    Tr. 30.

8           The Commissioner's credibility determination must be supported by

9    findings sufficiently specific to permit the court to conclude that the ALJ did not

10   arbitrarily discredit claimant's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345-

11   46 (9th Cir. 1991) (en banc).  If there is no affirmative evidence that the claimant is

12   malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

13   claimant's testimony regarding the severity of symptoms.  *Reddick v. Chater*, 157

14   F.3d 715, 722 (9th Cir. 1998).  If the ALJ's credibility findings are supported by

15   substantial evidence in the record, the court may not engage in second-guessing.

16   *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999);

17   *Fair*, 885 F.2d at 604 ("Credibility determinations are the province of the ALJ.").

18   However, an ALJ's failure to articulate specifically "clear and convincing" reasons

19   for rejecting plaintiff's subjective complaints is reversible error.  *Orn v. Astrue,*

20   495 F.3d 625, 640 (9th Cir. 2007).

21

The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Under the first step, the claimant must produce objective medical evidence of an underlying medically determinable impairment, and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms."  *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986).  Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant.

When assessing a claimant's credibility, the lack of objective medical evidence is a proper factor to consider along with a claimant's treatment history, daily activities, work record, reputation for truthfulness, inconsistencies in or between her testimony and conduct, observations of physicians, and observations of third parties with personal knowledge of the claimant's symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burch*, 400 F.3d at 680; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  In addition, an adjudicator may draw adverse inferences from a claimant's failure to seek treatment for symptoms for months after the alleged onset of disability and if a claimant stops working for reasons unrelated to his alleged disability.  *Bruton v. Massanari*, 208 F.3d 824, 828 (9th Cir. 2001).  Adverse inferences also may be drawn from a claimant's refusal to follow treatment recommendations that would improve her allegedly severe symptoms.  *Tonapetyan*, 242 F.3d at 1147-48.

If the ALJ finds a claimant's statements are not entirely credible, he need not reject totally a claimant's symptom testimony.  The ALJ may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole.  *Taylor v. Astrue*, 661 F. Supp. 2d 1184, 1191 (E.D. Wash. 2009).

Ms. Sanchez has no history or indications of malingering.  *See generally* ECF No. 9.  Therefore, the ALJ must provide clear and convincing reasons for finding Ms. Sanchez's self-assessment not credible.  *Reddick*, 157 F.3d at 722. Ms. Sanchez has produced objective medical evidence of her underlying impairments, which the ALJ found could reasonably be expected to produce her symptoms.  Tr. 27-28.  Here, the ALJ based the credibility determination on Ms. Sanchez's objective medical findings, including but not limited to:

- excellent results following cervical spine surgery in 2011, which relieved her radicular symptoms with only routine follow-up and no evidence of physical therapy;

- no abnormal neurological findings during the relevant period of January 2010 to May 2011;

- in July, 2011, excellent results following anterior discectomy and fusion with allograft and anterior cervical planting surgery which resulted in an absence of radicular pain and a gait without ataxia or weakness;

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 17

- In December 2012, an evaluation by Dr. Wernick that resulted in a recommendation of physical therapy for Ms. Sanchez's neck with no evidence that she undertook that recommendation until a year and a half later;

- the ability to move without obvious difficulty on July 30, 2012;

- walking with a normal gait in September 28, 2012, with normal grip in biceps, triceps and deltoids, normal flexion/extension of the knee and no swelling;

- well-controlled diabetes, per Ms. Sanchez's testimony; and

- a diagnosis of asthma but no complications reported in the record, no abnormal respiratory findings, and no pulmonary function reports.

Tr. 28-30.

Ms. Sanchez, as discussed above, has an ability to perform a full array of the activities of daily living. Ms. Sanchez's activities of daily living, taken in tandem with the ALJ's recitation of the objective medical findings, which include unexplained failures to seek or follow prescribed courses of physical therapy, casts doubt on the sincerity of her subjective complaints. The Court finds that the ALJ permissibly rejected Ms. Sanchez's subjective complaints based on substantial evidence and specific reasons.

**4. Failure to include in his hypothetical to the Vocational Expert all of the relevant limitations identified by the Medical Expert**

Ms. Sanchez argues that the three jobs that the ALJ concluded that Ms. Sanchez could perform is based upon a hypothetical that does not include all the limitations made by Dr. Gaffield.  ECF No 12. at 14.  Defendant argues that a finding for Ms. Sanchez on this issue is predicated on the success of her three previously stated errors and declines to argue this point, as it would not present an independent basis for reversal.  ECF No. 13 at 2, n. 1.

At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail*, 722 F.2d at 1498.  "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).  The court may consider legal errors committed by the ALJ as harmless where the errors are inconsequential to the ultimate disability conclusion when considering the record as a whole.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Here, Ms. Sanchez appears to claim that the ALJ did not include all the limitations set forth by Dr. Gaffield in the presentation of hypotheticals to the Vocational Expert, omitting the stated restriction of handling and grasping limited

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 19

1  to only "occasionally."  ECF No. 12 at 3, 17.  However, the ALJ did include

2  hypotheticals of occasional handling and grasping, as evidenced in the following

3  colloquy:

> ALJ:  All right.  Now we're going to switch it to a -- we're going to keep
> everything the same except -- so we're still light lifting, but only two
> hours on the feet; when it comes to rotation, flexion, or extension of the
> neck, instead of frequent, I'm going to make that occasional; **and when
> it comes to handling and fingering, instead of frequent, as in the
> first hypothetical, I'm going to change that to occasional.  With
> those changes, would that impact the ability to perform any of the
> jobs that you've identified in response to hypothetical number one?**
>
> VE:  **Yes**, all of them.
>
> ALJ:  It would **not be possible** to do?
>
> VE:  No.
>
> ALJ:  **They require more than occasional handling and fingering**
> and head movements likely?
>
> VE:  **Yes**.  Yes.
>
> ALJ:  What about **the job base as a whole**?
>
> VE:  **I would think it would be eliminated**, because you just –you
> have to be able to use your hands more than one-third of the time . . .
>
> Tr. 87-88 (emphasis added).

16     Two of the three jobs recommended by the ALJ were categorized as

17  "sedentary" exertion while one was categorized as "light" exertion.  Tr. 43.

18  Sedentary work involves lifting no more than ten pounds at a time and occasionally

19  lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. §

20  404.1567(a).  Light work involves lifting no more than twenty pounds at a time

with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. §

404.1567(b).  These were the same three jobs that the Vocational Expert stated

"would be eliminated" in an "occasional" handling and fingering hypothetical, as

these jobs require "frequent" handling of objects.  Tr. 88.

However, disregarding the effects of a limitation of only occasionally

handling or grasping items does not rise to the level of a reversible error as it is

inconsequential to the ultimate disability conclusion.  As discussed above in

Section 1, the ALJ properly rejected the limitation of occasional manipulation as

not supported by objective findings.  Tr. 32.  The ALJ noted that there is no

specific Listing for carpal tunnel syndrome in 20 C.F.R. § Pt. 404, Subpt. P, App.

1.  Tr. 24.  The ALJ found that none of Ms. Sanchez's other neurological

symptoms meet or medically equal the Listing requirements under 20 C.F.R. § Pt.

404, Subpt. P, App. 1, 11.00, Neurological.  Tr. 24.  Ms. Sanchez still has no

impairment, or combination of impairments, that would meet a Listing in 20 C.F.R.

§ Pt. 404, Subpt. P, App. 1.

The ALJ provided a listing of jobs for which Ms. Sanchez is qualified,

meeting his requirement under the Commissioner's five-step sequential evaluation

process.  Therefore, the Court affirms the ALJ's finding that Ms. Sanchez is not

disabled.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 21

2.  Defendant's Motion for Summary Judgment, **ECF No. 13**, is

**GRANTED**.

3.  **Judgment** is awarded in Defendant's favor.

The District Court Clerk is hereby directed to enter this Order, to **close** this case, and to provide copies to counsel, and to close this file.

**DATED** this 14th day of August 2016.


_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 22